FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 08, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MYRA K.,[1]

          Plaintiff,

    v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

          Defendant.

No.   1:22-cv-3083-EFS

**ORDER REVERSING THE ALJ AND REMANDING FOR FURTHER PROCEEDINGS**

      Plaintiff Myra K. appeals the denial of Title 2 benefits by the Administrative Law Judge (ALJ). The Court agrees the ALJ erred 1) by failing to recognize that the prior 2010 ALJ decision was not a final decision entitled to a presumption of continuing nondisability and 2) by not finding a severe mental impairment. On remand, the ALJ is to remedy these errors and reevaluate Plaintiff's Title 2 claim.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

**A.    Standard of Review**

The ALJ's decision is set aside "only if it is not supported by substantial evidence or is based on legal error," and such error impacted the nondisability decision.[2] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3]

**B.    The Prior ALJ Decision was not a Final Decision.**

There is a presumption of continuing nondisability if a claimant was previously denied disability, that disability denial was final, and there are no changed circumstances.[4]

Here, there was confusion at the administrative level as to whether the presumption of continuing nondisability applied to Plaintiff's at-issue applications. Plaintiff previously sought disability benefits in 2007, and the ALJ denied her applications in 2010. Upon Plaintiff's request, the Appeals Council remanded the matter back to the ALJ to consider a treating opinion for the first time and reevaluate Plaintiff's RFC.[5] When Plaintiff did not appear for the new hearing, the

---

[2] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[3] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[4] *Chavez v. Bowen*, 944 F.2d 691 (9th Cir. 1988); Acquiescence Ruling 97-4p(9).

[5] AR 40–98, 131–53.

ALJ reaffirmed the prior denial without evaluating the treating opinion or reevaluating Plaintiff's RFC.[6]

Then, in 2018, Plaintiff filed the current applications under Title 2 and 16, alleging that her disability began May 1, 2016.[7] After a telephonic hearing, ALJ Glenn Meyers granted disability under Title 16 based on Plaintiff's modified light-work RFC, "closely approaching advanced age" category, and work history, but denied disability under Title 2, as Plaintiff could perform past relevant work as a court clerk.[8] The ALJ found Plaintiff had severe impairments of alcohol abuse with alcoholic pancreatitis and bilateral knee degenerative joint disease.[9]

The Commissioner concedes ALJ Meyers improperly found that the prior ALJ's 2010 decision resulted in a prior final decision denying disability, but the

---

[6] AR 155–59.

[7] AR 386–403, 242–61.

[8] AR 12–39. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled. If there is medical evidence of drug or alcohol addiction, the ALJ must then determine whether drug or alcohol use is a material factor contributing to the disability. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935; *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

[9] AR 18–19.

Commissioner argues that such error is harmless.[10] The Court, however, determines the error was consequential.

As to the prior ALJ's 2010 decision, ALJ Meyers stated:

> I find that the presumption of non-disability exists regarding the current claim in light of the prior Administrative Law Judge decision issued March 18, 2010. The claimant has rebutted the presumption because she has changed age categories. Therefore, I have adopted the findings from the prior decision unless new and material evidence warrants a change in those findings.[11]

ALJ Meyers later stated that he did not adopt the findings of the prior ALJ as to 1) cervical degenerative disk disease, 2) step three, and 3) the RFC, as he "considered all symptoms."[12] However, when crafting the RFC, the ALJ relied heavily on the reviewing opinions of Dr. JD Fitterer, MD, and Dr. April Henry, MD. The ALJ found these opinions to be consistent with each other and with the evidence regarding Plaintiff's bilateral knee impairments.[13] Therefore, the ALJ included their modified light-work restriction, rather than a sedentary-work

---

[10] ECF No. 15 at 3. *See also Kildare v. Saenz*, 325 F.3d 1078, 1082 (9th Cir. 2003) (defining two elements for a "final decision" under 42 U.S.C. § 405(g)).

[11] AR 16.

[12] AR 19–22.

[13] AR 27.

restriction, into the RFC.[14] Yet, neither physician appeared to consider the impact of Plaintiff's knee impairment on her ability to stand or walk for six hours.

Dr. Henry found that Plaintiff had a severe substance addiction disorder (alcohol) and a nonsevere impairment of gastrointestinal system disorders and did not list a knee impairment as an impairment.[15] Dr. Fitterer did find that Plaintiff had the severe impairments of osteoarthrosis and allied disorders and chronic obstructive pulmonary disease. Yet, Dr. Fitterer's opinion adopted the prior ALJ's RFC, which was based on an analysis of the record that the Appeals Council deemed inadequate as it failed to consider a treating opinion. For instance, the Findings of Fact and Analysis of Evidence that Dr. Fitterer either wrote or relied on state, "*For [Physical Health]—adopting ALJ as no serious decompensating in health since ALJ decision. [Claimant] remains capable of [light] work."[16] In addition, Dr. Fitterer wrote "Adopting ALJ" for his explanation as to his opined light-work and other exertional limitations.[17]

Neither Dr. Fitterer nor ALJ Meyers mentioned that the prior ALJ decision did not include any assessment about Plaintiff's *knees*, as Plaintiff did not allege knee pain as part of her prior disability applications. Instead, Plaintiff's prior

---

[14] AR 22.

[15] AR 194–226.

[16] AR 218.

[17] AR 20.

disability applications were based on back, neck, shoulder, and arm pain and medication side-effects.[18] Because Dr. Fitterer reviewed Plaintiff's current disability applications in light of her prior applications, the basis for Plaintiff's prior applications impacted Dr. Fitterer's recommended restrictions as he—and Dr. Henry—discussed "DDD"—degenerative disc disease—and imposed "postural limitations 2nd to DDD."[19] Dr. Fitterer failed to discuss how he considered Plaintiff's knee pain, which she started experiencing after a scooter accident in 2015, when reaching his opinion.

In comparison, Eze Nwaumbi, DNP, and Dr. Derek Leinenbach, MD, considered Plaintiff's bilateral knee impairment when reaching their opinions. Nurse Nwaumbi examined Plaintiff in August 2018 and limited her to sedentary work.[20] However, the ALJ found that Nurse Nwaumbi's sedentary-work restriction was poorly supported by objective findings, explanation, and the overall medical record.[21] Likewise, the ALJ "did not find persuasive the opinion of reviewing physician" Dr. Leinenbach, who reviewed Nurse Nwaumbi's opinion and adopted her assessment, because Dr. Leinenbach's opinion was also "poorly supported and

---

[18] AR 142–43.

[19] AR 187, 221.

[20] AR 947–51.

[21] AR 27–28.

inconsistent with the record as a whole."[22] In making these findings, the ALJ did not mention that Nurse Nwaumbi observed lesion scars—scars that Plaintiff developed due to the 2015 scooter accident—on both of Plaintiff's legs, knee tenderness, and mildly reduced range of motion in bilateral knees.[23] The ALJ also did not mention that Dr. Leinenbach had the opportunity to review the December 4, 2018 x-ray showing tricompartmental arthritic changes in Plaintiff's knees with the narrowing of the lateral compartments greater in her left knee than her right knee and a November 5, 2018 treatment note indicating that her gait was compensated.[24] Based on his review of these medical records, Dr. Leinenbach found Nurse Nwaumbi's sedentary-work limitation supported by available medical evidence.

In defense of ALJ Meyer's decision, the Commissioner highlights that the December 2018 x-ray was taken after Plaintiff's date last insured of June 30, 2017. However, a December 14, 2015 treatment note states that Plaintiff was "having exacerbation of osteoarthritis in her right knee."[25] In August 2016, Plaintiff was observed with an obvious spur on her left knee and her treating provider increased

---

[22] AR 28.

[23] AR 952–56. *See also* AR 668–70.

[24] AR 1084 (referring to AR 1024, 1052).

[25] AR 665.

her pain prescription.[26] In May 2017, Plaintiff presented with swelling in her left knee.[27] These medical records support that Plaintiff had a severe impairment of bilateral degenerative joint disease in her knees since May 1, 2016, well before the 2018 x-ray documenting the arthritic changes.

The ALJ's analysis of the medical opinions reflects that the Title 2 nondisability decision was impacted by the presumption of continuing nondisability. Although ALJ Meyers did find that Plaintiff changed her age category, this changed circumstance is not sufficient by itself to remedy the error resulting from the belief, by both ALJ Meyers and Dr. Fitterer, that the prior ALJ findings were presumed to be binding. As a result, remand for further proceedings—with no presumption of nondisability—is required.

**C.  Step Two (Severe Impairment): Plaintiff establishes consequential error.**

Plaintiff argues that the ALJ erred at step two by failing to find that she has a severe mental impairment. The Court agrees.

At step two of the sequential process, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[28] This involves a two-step

---

[26] AR 649

[27] AR 640.

[28] 20 C.F.R. §§ 404.1520(c), 416.920(c).

process: 1) determining whether the claimant has a medically determinable impairment and 2), if so, determining whether the impairment is severe.[29]

Here, the ALJ found Plaintiff had two severe impairments: abuse with alcoholic pancreatitis and bilateral knee degenerative joint disease.[30] The ALJ did not find Plaintiff's diagnosed PTSD to be a severe impairment because it was only mildly limiting.[31] This finding is not supported by substantial evidence.[32]

The medical record reflects that Plaintiff has co-occurring severe PTSD. Plaintiff's limited periods of sobriety make it difficult to parse out what symptoms are caused by PTSD and what symptoms are related to her substance abuse. Plaintiff herself recognized that her mental-health symptoms are more evident during periods of abstinence from substance abuse.[33] The record reflects that Plaintiff's PTSD was more than mildly limiting.

Social Security Ruling 13-2p permits the ordering of a consultative examination to help determine whether a claimant has a mental disorder that co-

---

[29] *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[30] AR 18–19.

[31] AR 19–20.

[32] Because the Court finds the ALJ failed to consider PTSD as a severe impairment at step two, the Court does not address whether the ALJ failed to find a severe learning disorder.

[33] AR 964.

occurs with substance abuse. Such was ordered here, and Dr. Steven Olmer, PhD, conducted a consultative psychological examination of Plaintiff in July 2018.[34] During the examination, Dr. Olmer needed to ask questions multiple times and observed Plaintiff struggle with recall and with increased physical agitation, a vivid recollection and report of traumatic experience, and a drifted gaze.[35] Dr. Olmer diagnosed Plaintiff with alcohol use, PTSD, and learning disabilities, and opined moderate and marked work-activity limitations.[36] Dr. Olmer found that Plaintiff's impairments were primarily the result of alcohol or drug use within the past 60 days but that her impairments would persist following 60 days of sobriety.[37] The ALJ discounted Dr. Olmer's opinion.[38]

Consistent with Dr. Olmer's PTSD diagnosis, Plaintiff's treating counselor listed PTSD as a diagnosis.[39] And reviewing psychologist Michael Brown, PhD, found Plaintiff's trauma-and-stressor-related disorders to be severe. Although he reviewed the record after the date last insured, the record reflects that Plaintiff's

---

[34] AR 934–46.

[35] AR 936–42.

[36] AR 936–37.

[37] AR 937.

[38] AR 934–46.

[39] AR 982.

1  PTSD relates to childhood trauma and therefore Plaintiff's PTSD symptoms
2  existed prior to her date last insured.[40]

3      Plaintiff was sexually abused as a child, and she began drinking and using
4  drugs in her childhood and has attempted suicide.[41] Treatment records reflect that
5  Plaintiff was recommended to participate in mental-health treatment to reduce
6  trauma-related symptoms that were co-occurring with her substance abuse.[42] In
7  2018–19, she participated in both MICA (mentally ill chemical abusing) and IDDT
8  (integrated dual disorder treatment) treatment to assist with co-occurring mental
9  illness and a substance use disorder.[43] Records during the few months in 2018 that
10 Plaintiff appeared to be sober reflect that she was anxious.[44]

11     Given Dr. Olmer's observations, Plaintiff's reported traumatic childhood
12 experiences and suicide attempts, and Plaintiff's treatment for co-occurring PTSD,
13 the ALJ's finding that Plaintiff did not have a severe mental-health impairment

---

[40] AR 217–23.

[41] AR 934, 942.

[42] *See, e.g.*, AR 964-65 ("We reviewed [Plaintiff's] trauma-related symptoms, meeting criteria for Posttraumatic Stress Disorder."); AR 1010 ("'We completed a program admission so that she may receive integrated treatment for her dual disorder.").

[43] *See, e.g.*, AR 987, 990, 992.

[44] AR 1009, 1011.

during the at-issue period is not supported by the record. This is not a weak claim that was properly screened out at step two.[45]

### D. Other Steps: The ALJ must reevaluate on remand.

Because the above errors impacted the ALJ's assessment of the medical evidence, medical opinions, and Plaintiff's symptom reports, the Court does not analyze Plaintiff's remaining claims. On remand, the ALJ is to reassess whether between May 1, 2016, and June 30, 2017, Plaintiff qualified for disability under Title 2, while including PTSD as a severe impairment. No presumption of continuing nondisability is to apply.

### E. Conclusion

For the above-given reasons, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. All pending motions and hearings are **TERMED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4. This matter is **REVERSED and REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

---

[45] *See Smolen*, 80 F.3d at 1290; SSR 85-28 at *4.

5.     The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 8th day of August 2023.

*Edward F. Shea*
_____
EDWARD F. SHEA
Senior United States District Judge